Peter M. Daly, J.
Plaintiffs are the husband and two daughters of Hedwig E. Wiencko, who died a resident of Queens County on July 1, 1955. Defendants are the executors of the last will and testament of Nellie Marincin, a sister of said Hedwig E. Wiencko, who died on February 14, 1956. Plaintiffs brought this action to set aside (1) a deed allegedly made by Mrs. Wiencko on April 26, 1955 conveying premises 147-58 Arlington Terrace, Jamaica, New York to herself and her sister, Mrs. Marincin, and (2) a last will and testament allegedly made on the same date in which Mrs. Wiencko left her entire estate to Mrs. Marincin, except for a bequest of $10 to her two daughters. The action is based on the claim that Mrs. Marincin exercised undue influence on her sister, Mrs. Wiencko. In a prior will executed by Mrs. Wiencko in 1949, she left her entire estate to her two daughters, except for a bequest of $4,000 to her sister.
Mrs. Wiencko had been in poor health for some years prior to her death. In July, 1953, she had undergone an operation *187 by a Doctor Philipp, who then predicted that she had only two years to live. Between that time and June or July of 1954, she visited Doctor Philipp’s office once a week, being brought there by one of her daughters.
Mrs. Wiencko lived in the three-family house in Jamaica. Her two daughters lived with her while single, and after their respective marriages lived in separate apartments in the same house with their husbands and children. Mrs. Wiencko and her husband had separated about 1947. In late 1953 or early 1954 Mrs. Marincin, who had been a frequent visitor, came to live with her sister.
Mrs. Marincin had a poor opinion of the deceased’s husband, her two daughters and her sons-in-law, and apparently she made no effort to conceal her views. She indulged in carping criticism of all of them whenever the occasion permitted, and in some instances appears to have made the occasion. Admittedly, the relations of the plaintiffs with Mrs. Marincin were not harmonious.
In January, 1955, Mrs. Marincin placed a hook and eye on the door leading to Mrs. Wiencko’s door, with a view to barring the daughters and neighbors from visiting Mrs. Wiencko.
On April 21, 1955, five days before the execution of the deed and will, Mrs. Marincin called the police and asked them to arrest the two daughters for allegedly beating Mrs. Wiencko. The police insisted on seeing Mrs. Wiencko, although Mrs. Marincin said, “ You can take my word for it.”
When the police asked Mrs. Wiencko if she had been assaulted or hit by anyone, she said no. The police asked if she wanted a doctor or an ambulance, and she again said no. She kept insisting that she had not been beaten.
The police then spoke to the daughters who denied having beaten their mother. Mrs. Marincin became abusive and called the policemen Communists. The police asked the daughters if they wanted Mrs. Marincin taken to Bellevue for observation, but the daughters said no. One of the exhibits shows that Mrs. Marincin had at one time been confined in Creedmoor State Hospital.
Five days later — on April 26, 1955 — Mrs. Wiencko, in the company of her sister Mrs. Marincin, called at the office of a prominent attorney in Jamaica, and asked to have her will drawn.
The attorney testified that Mrs. Wiencko told him that her children had been unkind to her and had beaten her, and that the police had had to be called on April 21, but that she did not press the charge. The attorney had his secretary examine *188 Mrs. Wiencko and she testified that she did see some bruises on Mrs. Wiencko. One of Mrs. Wiencko’s friends had previously testified that on one of her visits at about this time Mrs. Wiencko had fallen out of bed.
When the attorney found that the house was practically the sole asset of Mrs. Wiencko, he told her she did not need a will, but could execute a deed creating a joint tenancy with her sister, and that was done. Mrs. Wiencko, however, still wanted to make a will. The attorney then asked Mrs. Marincin to step outside and talked with Mrs. Wiencko privately about the terms of the will, which was then drawn and executed.
The attorney had never met Mrs. Wiencko before she came to his office, nor did he ever see her again thereafter. He had no personal knowledge of the truth of the facts related to him by Mrs. Wiencko, but knew only what she told him.
On the other hand, many neighbors and friends who were' accustomed to visit Mrs. Wiencko during her illness and to converse with her in Polish, testified that the daughters were kind to their mother and took care of her wants. They also testified that Mrs. Wiencko always spoke well of them and stated that she intended to leave her house to them. These neighbors and friends had an opportunity to observe for themselves the conduct of the daughters and of Mrs. Wiencko’s views and regard for them. It is significant that the defendants adduced no corroboration whatsoever either of actual mistreatment by the daughters or even that Mrs. Wiencko had ever claimed to have been mistreated at any time. While the attorney took the precaution to exclude Mrs. Marincin from the room while he obtained the information to draw the will, this merely removed the danger of actual duress, but could not overcome the effect of the undue influence flowing from the actions of Mrs. Marincin over the previous few months, of which, of course, the attorney had no knowledge.
The weight of the evidence indicates that Mrs. Marincin dominated her sister, and that the recital of alleged mistreatment to her attorney can be attributed only to such domination and influence.
In Reoux v. Reoux (3 A D 2d 560, 562) the court said: “ A gift of course requires no consideration but on the other hand when questioned it must be shown to have been freely and voluntarily made. Where a confidential relationship exists between parties a valid gift must be established by evidence that is clear and satisfactory. Where parties do not deal on terms of equality it requires but slight evidence to shift to the donee the burden of proving by clear and satisfactory evidence *189 that any transfer of property in question was free and voluntary on the part of the donor.” (Citing cases.)
In the instant case, concededly Mrs. Wiencko had been ill and had been under the domination of Mrs. Marincin, who had excluded relatives and neighbors from access to her and who accompanied her to the lawyer’s office. There is no question who was the stronger of the two. Under these circumstances, defendants had the duty to come forward with clear and convincing proof that the deed and will were voluntary. This they failed to do.
Judgment is granted in favor of. the plaintiffs, setting aside the deed and will executed on April 26, 1955.
At the trial defendants raised no objection to litigating the validity of the will in the Supreme Court, and specifically conceded this court’s jurisdiction to rule thereon. Having thus elected to litigate the matter in this court, the judgment is binding with respect to the will as well as the deed. (Matter of Malloy, 278 N. Y. 429; Stevenson v. News Syndicate Co., 302 N. Y. 81.)
Settle judgment on five days’ notice.